(No. 24732.—

THE PEOPLE *ex rel.* Knowlton L. Ames, Jr., Director of Finance, *et al.* Appellees, *vs.* GEORGE M. MARX, Appellant.

*Opinion filed December 15, 1938—Rehearing denied Feb. 8, 1939.*

WILLIAM SCHULZE, and LOUIS DAVID FRIEDMAN, for appellant.

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, and PHILIP J. SIMON, of counsel,) for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

George M. Marx was a distributor of gasoline in Cook county, Illinois. For the month of December, 1931, he reported sales of 275,392 gallons of gasoline upon which he was required to collect for the State of Illinois three cents per gallon fuel tax. The amount he was required to remit, less two per cent for expense of collection, amounted to $8096.52, and on January 16, 1932, he remitted this amount by check to the Director of Finance of the State of Illinois in payment of said tax. This check was drawn on the Stockmen's Trust & Savings Bank of Chicago, and upon presentation by the Director of Finance payment was refused, because, at that time, the bank had been closed and a receiver appointed. Previously, in compliance with the law, Marx had delivered to the Director of Finance a bond

in the sum of $5000 payable to the People of the State of Illinois, signed by himself, as principal, and the American Bonding Company, as surety, in which it was provided that if the principal should pay to the State of Illinois all moneys becoming due under the provisions of the Motor Fuel Tax law by reason of the sale or use of motor fuel, together with all penalties and interest accruing thereon, then the bond was to be void, otherwise it was to remain in full force and effect.

In November, 1932, Marx had a conference with the Director of Finance and the Attorney General, after which an intervening petition was filed by the Director of Finance in the bank-receivership case, claiming, on behalf of the People of the State of Illinois, the said sum of $8096.52 deposited in the name of Marx, as tax money due the State and entitled to priority of payment, over other debts of the bank. In April, 1934, suit was filed in the circuit court of Cook county by the People, upon the relation of the Director of Finance, against Marx and the American Bonding Company, upon the bond in the sum of $5000, and against Marx, alone, for the further sum of $3096.52, the amount due in excess of the principal of the bond. Judgment was entered in the circuit court of Cook county against the defendant and he has appealed.

After several amendments to the complaint, an answer was filed by the defendants which alleged a state of facts substantially as those alleged in the complaint but asserting, as a defense, that the Director of Finance and the Attorney General, by filing the intervening petition against the receiver of the insolvent bank, had made an election of remedies, thus preventing recovery upon the bond, and further alleging that the bond, itself, had been canceled by the Director of Finance marking across the face thereof the word "cancelled."

A motion made by Marx to strike the complaint, as amended, was denied. After the answer was filed, a sum-

mary judgment was prayed by the plaintiff and an affidavit of claim filed. The defendant, Marx, filed a counter-affidavit of merits setting forth substantially the same matters contained in the answer, and attaching a copy of the intervening petition of the Director of Finance in the bank-receivership case. This counter-affidavit also set forth that Marx had paid the Director of Finance the sum of $18,000 between September 16, 1931, the date of the bond, and January 20, 1932, but did not specify that the tax of $8096.52 due for December, 1931, had been paid. His answer expressly admits that the December, 1931, tax was not paid, except by a check on which payment was refused, as above stated.

It is claimed the affidavit of claim of plaintiff is defective in that the person making the affidavit nowhere stated the facts to be true, and that the bond mentioned in such affidavit did not have the word "cancelled" upon the face, as did the one attached to the complaint. No motion was made to strike the plaintiff's affidavit of claim upon which judgment was entered. The Civil Practice act (Ill. Rev. Stat. 1937, chap. 110, par. 181) provides for summary judgment upon an affidavit to be made upon personal knowledge of truth by the person making the affidavit, which will entitle the plaintiff to judgment unless the defendant files an affidavit of merits showing a good defense to all or a part of the demand. The answer and affidavit of merits of the defendant allege that he was a licensed distributor, and executed the bond in question; that he collected the excise tax as an agent of the State of Illinois; that he deposited the money in the bank in question; that he made monthly reports; that he drew a check payable to the Director of Finance for $8096.52 for the month of December, 1931; that the check was returned unpaid, because the bank was closed. It will be observed that these allegations contained in the answer are substantially identical with those contained in the complaint, and hence there

is no controversy as to the facts constituting the plaintiff's claim because there is an agreement between both parties as to those facts.

It is elementary that the admission in pleading, either by way of demurrer or direct admission, or the statement of facts concurring with those alleged in the complaint, does not require additional proof to authorize judgment. (*Severy* v. *McDougall*, 259 Ill. 272; *Loughridge* v. *Northwestern Mutual Life Ins. Co.* 180 id. 267.) When the complaint is sufficient, and its essential facts are admitted, it would destroy the object of the Practice act to hold that, where a party is entitled to judgment upon the complaint and answer, such judgment may be denied upon the insufficiency of the affidavit of claim filed for the purpose of proving the same facts agreed to by both plaintiff and defendant. We think this point without merit.

The defendant, however, in his affidavit of merits and answer shows additional facts which he claims constitute a defense. If such is the case judgment should not have been entered, but if such affirmative matters do not, as a matter of law, constitute a defense, they may be disregarded as surplusage and judgment entered. Briefly, the contention of Marx is that he owed $8096.52 to the State of Illinois for motor fuel tax; that he gave a check for this amount payable to the Director of Finance, which was not paid because the bank on which it was drawn was closed. There is no contention that this account stood in the name of the People of the State of Illinois, and "Exhibit b" attached to the affidavit of claim shows it was drawn upon the personal account of "Marx Bros." After a conference with Marx, the Director of Finance filed an intervening petition and attempted to procure from the receiver of the closed bank the said sum of $8096.52. Marx alleged that the bond was canceled by the Director writing across the face thereof "cancelled," and that the effect of this procedure upon the part of the Director of Finance consti-

tuted an election which released Marx from the payment of the tax money. It is to be noted that the intervening petition filed by the Director of Finance does not allege or set forth that he had canceled or released the bond, nor is it alleged in the affidavit of merits of defendant that the director released him from his primary liability to remit the taxes collected by him. The question presented is: Assuming these facts to be true, do they constitute a defense, either to the action on the bond, or to the excess claim of $3096.52 against Marx?

It appears from the photostatic exhibit attached to the complaint that the word "cancelled" was written across the bond sued upon. The photostatic copy of the exhibit attached to the plaintiff's affidavit of claim is identical with the one attached to the complaint, except the word "cancelled" does not appear upon it. The defendant's affidavit of merits alleges the Director of Finance agreed to cancel the bond and did cancel it by writing the word "cancelled" across it, and that the Director of Finance elected to follow the funds in the Stockmen's Trust & Savings Bank. The first question arising is: Did the Director of Finance cancel the bond, or have the right to so cancel it?

Section 23 of article 4 of the constitution provides: "The General Assembly shall have no power to release or extinguish, in whole or in part, the indebtedness, liability, or obligation of any corporation or individual to this State, or to any municipal corporation therein." The Director of Finance is an officer created by an act of the General Assembly. If the General Assembly cannot so release an obligation it is plain that the Director of Finance of the State of Illinois cannot release it.

The bond was an obligation or liability at the time intervention was made by the Director of Finance. Marx had not paid the tax due to the State of Illinois at the time of the alleged conference with the Director of Finance in

the winter of 1932, and under its terms the condition of the bond was broken, and the penalty was owing to the State of Illinois. If the affidavit of merits of defendant Marx is intended to claim the demand of the People of the State of Illinois upon this bond was released it cannot be upheld, as neither the General Assembly, nor any officer created by it, could be vested with such authority. The fact that previous tax payments had been paid by checks does not bar the suit, as the State is not estopped by the acts of its officials. (*People* v. *Woods*, 354 Ill. 224.) However, both in the affidavit of merits, and in the answer, appellant couples the alleged cancellation with the filing of the petition of intervention in the receivership case, and claims this amounts to an election on the part of the People to waive all rights upon the bond, and to rely upon the funds in the Stockmen's Trust & Savings Bank to satisfy the demand. Without considering whether the Director of Finance and the Attorney General could, in this manner, do something they had no power to do directly, this claim is without merit because the doctrine of election of remedies can only be used as a defense where the remedies pursued are inconsistent. *Jackson* v. *Industrial Board,* 280 Ill. 526; *Bradner Smith & Co.* v. *Williams,* 178 id. 420.

If there are two persons independently liable upon the same demand, suit against one of them does not prevent bringing suit against the other, unless satisfaction is had in the first suit. Nor is bringing an action upon a mistaken ground an election, since, if the party bringing the suit never had a cause of action, there is nothing upon which to base an election. (*Chicago Title and Trust Co.* v. *DeLasaux,* 336 Ill. 522.) Where an agent deals with a party without disclosing his principal, such party becomes liable to the undisclosed principal upon receiving notice of the latter's rights (*Barker* v. *Garvey,* 83 Ill. 184; *Conklin* v. *Leeds,* 58 id. 178;) unless rights have accrued to such

third person against the agent. *Koch* v. *Willi,* 63 Ill. 144; *Stinson* v. *Gould,* 74 id. 80.

It is, of course, elementary, that the agent is liable to his principal if he does not properly account for funds in his possession. And it has been held that accepting a check for taxes is conditioned upon its being paid when presented. (*People.*v. *Woods, supra.*) So there is nothing inconsistent in suit being brought against both parties, possibly liable, to collect the amount due.

The record does not disclose whether the Director of Finance was successful in his intervention suit, or was unsuccessful because of the rights of the bank's depositors, but it is to be assumed that if he had succeeded in collecting the money such satisfaction would have been alleged, in which event a different question would be presented. The intervention upon the part of the Director of Finance in the receivership case could not damage Marx, but if successful, would have been highly beneficial to him, as in such event the People would have received all of its demand as a preferred claim, while Marx himself would only have received his *pro rata* on the same basis as other depositors. There is nothing to show that Marx has not, or will not, receive from the receiver his proper dividend.

It is to be further noted that no claim is made anywhere that Marx was individually released upon his primary liability to pay the tax, and since the bonding company has not appealed, it is not perceived how the situation has been changed in any way to the disadvantage of Marx.

Finally, it is claimed there was an issue of fact for the court to determine because defendant's affidavit shows $18,000 paid in fuel tax between September 16, 1931, and January, 1932. This was obviously in answer to the second count, which alleged that between the date of the bond and January 20, 1932, the unpaid tax amounted to $8096.52. The whole issue concerns the tax due for the month of De-

cember, 1931, both as shown by the pleadings and affidavit of merits of both parties. With such an issue the defendant's affidavit that $18,000 was paid in taxes from September, 1931, to January, 1932, is a departure from the issue raised by the pleadings, did not constitute a denial of the amount unpaid for the month of December, 1931, and was properly disregarded by the trial court.

The affirmative matters set forth in the defendant's affidavit of merits do not show he has any defense to the claim.

It is our conclusion that the judgment of the circuit court of Cook county should be and it is, affirmed.

*Judgment affirmed.*